UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE PANOS and EVANGELOS THOMATO,
as Co-Executors of the Estate of Petros Sarantakos,

Plaintiffs,

-against-

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER OF SIGNATURE
BANK and SIGNATURE BRIDGE BANK, N.A.,
and "ABC CORPORATION" NO. 1 through "ABC
CORPORATION" NO. 11, the true name of said 11
defendant corporations being unknown to plaintiff,

Defendant.

Case No. 1:24-cv-03496 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

This case arises from an alleged scheme by the now-deceased attorney for an estate to

unlawfully divert estate funds.  George Panos and Evangelos Thomato, as Co-Executors of the

Estate (the "Estate") of Petros Sarantakos (together, "Plaintiffs"), bring this cause of action

against the Federal Deposit Insurance Corporation ("FDIC") as Receiver for Signature Bank

(the "FDIC-Receiver-Signature") and the FDIC as Receiver for Signature Bridge Bank, N.A.

(the "FDIC-Receiver-Bridge") (together, the "FDIC-Receivers"),[1] and "ABC Corporation"

Nos. 1 through 11, the true name of said eleven Defendant Corporations being unknown to

Plaintiffs (together with FDIC-Receivers, "Defendants").  Plaintiffs assert claims for pre–

Uniform Commercial Code ("U.C.C.") breach of implied contract; strict liability pursuant to

Sections 3-419 and 4-207 of the U.C.C.; and common-law claims for conversion, unjust

enrichment, and for money had and received.

---

[1] The Receivers are separate legal entities.  Dkt. 11 at 1 n.1.

Now before this Court is the FDIC-Receivers' motion to dismiss Plaintiffs' Complaint for a lack of subject-matter jurisdiction pursuant to Federal Rule ("Rule") of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Dkt. 11 ("Br."). For the reasons set forth below, the FDIC-Receivers' motion is GRANTED.

## BACKGROUND[2]

### I. The Underlying Action

Plaintiffs are individual co-executors of the Estate of Petros Sarantakos pursuant to letters testamentary issued in June 2006. Compl. ¶ 1. Plaintiffs' allegations against the FDIC-Receivers arise from an alleged scheme by the Estate's now-deceased attorney, Kenneth Allen Habel, Esq., to steal Estate funds. Compl. ¶ 6. In October 2004, Petros Sarantakos executed a Last Will and Testament (the "Will") bequeathing a portion of his estate to 18 individual beneficiaries who were to receive 40 percent of the interest and principal payments from a mortgage taken out by 549 Realty Corp., expiring in June 2025. Compl. ¶ 4. Following Sarantakos's death in 2005, the Estate hired Mr. Habel to collect mortgage payments received by the Estate and to distribute those payments to the beneficiaries of the Estate. Compl. ¶¶ 5-6. Plaintiffs allege that, following Mr. Habel's death in 2021 and after receiving records from

---

[2] In addition to the Complaint — which contains factual allegations that the Court assumes to be true, *see N.Y. Life Ins. Co. v. United States*, 724 F.3d 256, 261 (2d Cir. 2013) — the Court considers "any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Id.* at 258 n.1 (quoting *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005)). Moreover, because Defendants have moved to dismiss for a lack of subject-matter jurisdiction, the Court also considers materials outside of the pleadings, including materials appended to the Declaration of Donald G. Grieser, Dkt. 10-1 ("Grieser Decl."), and to the Declaration of Gabriel Fischbarg, Esq., Dkt. 12-1 ("Fischbarg Decl."). *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings."); *Cangemi v. United States*, 13 F.4th 115, 129 (2d Cir. 2021) (same).

the Estate's banks, they discovered that Mr. Habel had been stealing money from the Estate

for several years.  Compl. ¶¶ 6-7.  Specifically, Plaintiffs allege that, beginning in January

2018 and continuing for several years thereafter:

> Mr. Habel would (1) send unsigned checks made payable to a beneficiary to
> the plaintiffs/co-executors for their signatures; (2) get the signed checks from
> plaintiffs, (3) illegally add his own name as co-recipient/co-payee to some of
> the checks, (4) sign his name, (4) [sic] forge the beneficiary's name on the
> back of the checks and (6) illegally deposit those checks in his own bank
> account instead of sending the checks to the beneficiaries.

Compl. ¶ 7.

Plaintiffs maintain that unbeknownst to them, Mr. Habel "deposited the [s]tolen

[c]hecks in his own account at Signature Bank or an account at one or more of Defendants

'ABC Corporation' No. 1 through 'ABC Corporation' No. 10."  Compl. ¶ 9.  Plaintiffs refer to

Signature Bank and Defendants "ABC Corporation[s]" Nos. 1 through 10 "jointly and

severally" as the "Payee Banks."  Compl. ¶ 10.

The Complaint appends two exhibits: a "list showing all of the checks that Mr. Habel

illegally diverted from the Estate to himself totaling $195,509.68," and copies of the alleged

stolen checks.  Compl. ¶ 8; *see* Dkt. 1-2 at 22, 23-45.  The list of stolen checks reflects that the

earliest check allegedly deposited as part of Mr. Habel's scheme was dated January 26, 2018,

and posted on January 29, 2018, and that the latest check was dated September 15, 2020, and

posted on September 16, 2020.  Dkt. 1-2 at 22.

Plaintiffs assert that the Payee Banks failed to exercise reasonable commercial

standards, including because they failed to examine and question (1) the lack of a second

endorsement by the co-payee that was not Mr. Habel made in the presence of a bank

employee and/or (2) the lack of valid identification from the co-payee that was not Mr. Habel

at the time of deposit.  Compl. ¶ 14.  Instead, Plaintiffs allege the Payee Banks simply

accepted the stolen checks for deposit in Mr. Habel's account, notwithstanding that those checks were "(1) all jointly payable on their faces to two payees, (2) not endorsed by both payees in the presence of a bank employee[,] and (3) not validated by both payees at the time of a check deposit." Compl. ¶ 16. Plaintiffs therefore maintain the Payee Banks "were participants in Mr. Habel's theft, conversion[,] and diversion of the Stolen Checks." Compl. ¶ 18.

On March 12, 2023, the New York State Department of Financial Services closed Signature Bank and appointed the FDIC as receiver for Signature Bank. Grieser Decl. ¶ 3. The FDIC accepted the appointment on March 12, 2023. Grieser Decl. ¶ 3; Dkt. 1-1. In accordance with 12 U.S.C. § 1821(n), the FDIC-Receiver-Signature organized Signature Bridge Bank, N.A. ("Signature Bridge Bank") to assume the deposits and certain other liabilities and assets of Signature Bank. Grieser Decl. ¶ 4. On March 12, 2023, the FDIC-Receiver-Signature and Signature Bridge Bank entered into a transfer agreement under which the FDIC transferred certain liabilities, including certain deposit liabilities, and contributed certain assets of Signature Bank to Signature Bridge Bank. Grieser Decl. ¶ 5; Compl. ¶ 2. On March 20, 2023, the Office of the Comptroller of the Currency closed Signature Bridge Bank, and FDIC entered into a purchase and assumption agreement whereby it assumed Signature Bridge Bank's liabilities. Compl. ¶¶ 2, 10.; Grieser Decl. ¶ 6.

The FDIC-Receivers prepared Publication Notices to Creditors and Depositors of Signature Bank and Signature Bridge Bank advising that "[a]ll creditors having claims against the Failed Institution must submit their claims in writing, together with proof of their claims to the [FDIC] on or before July 17, 2023" (the "Claims Bar Date"). Dkt. 10-6; Dkt. 10-7; *see* Grieser Decl. ¶¶ 7-9. The Publication Notices were published in various public newspapers, including the Wall Street Journal, the New York Times, the Los Angeles Times, San

Francisco Chronicle, Charlotte Observer, Raleigh News & Observer, and the Reno Gazette. Grieser Decl. ¶¶ 8-9.  They were circulated on March 30, 2023, May 1, 2023, and June 1, 2023.  Grieser Decl. ¶¶ 8-9.  Consistent with 12 U.S.C. § 1821(d)(5)(C), the Notices advised that "failure to file a claim on or before the Claims Bar Date will result in the [FDIC] disallowing the claim" and that such disallowance would be "final."  Dkt. 10-6; Dkt. 10-7. On October 6, 2023, the Estate, through counsel, submitted a claim through the FDIC claims portal, appending an unfiled summons and complaint.  Grieser Decl. ¶ 11.  None of the documents submitted in support of the Estate's administrative claim referenced Signature Bridge Bank or the FDIC-Receiver-Bridge.  Grieser Decl. ¶ 12; Dkt. 10-8.  The FDIC does not have any record of the Plaintiffs ever submitting a claim to the FDIC-Receiver-Bridge. Grieser Decl. ¶ 14.

On March 29, 2024, the FDIC-Receiver-Signature issued a Notice of Disallowance of Claim with respect to the Estate's administrative claim against the Signature Bank receivership.  Grieser Decl. ¶ 15; Dkt. 10-9.  The Notice of Disallowance stated: "This Claim was untimely filed and does not meet the late-filed exception test.  Further, even if the claim was considered to be timely filed, the claim would still be disallowed as not proven to the satisfaction of the Receiver."  Dkt. 10-9 at 2.

## II.  Procedural History

On or about January 16, 2024 — over two months prior to Plaintiffs' receipt of the FDIC-Receiver-Signature's Notice of Disallowance — Plaintiffs filed a Summons and Complaint against the FDIC-Receivers in the Supreme Court of the State of New York, County of New York.  *See generally* Compl.  On May 7, 2024, the FDIC-Receivers removed the action to this Court pursuant to 12 U.S.C. § 1819(b)(2)(B) and 28 U.S.C. § 1446.  Dkt. 1-4.  On July 8, 2024, the FDIC-Receivers filed a motion to dismiss Plaintiffs' Complaint

under Rule 12(b)(1) and Rule 12(b)(6). *See generally* Br. On July 22, 2024, Plaintiffs filed an opposition, Dkt. 12 ("Opp."), and on July 29, 2024, FDIC-Receivers filed a reply, Dkt. 13 ("Reply").[3]

## LEGAL STANDARD

"A case is properly dismissed for a lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (quotation marks and citation omitted), *aff'd*, 568 U.S. 85 (2013). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 462 F.3d 635, 638 (2d Cir. 2005)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). On a motion to dismiss under Rule 12(b)(1) or 12(b)(6), a court accepts the complaint's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (Rule 12(b)(1)); *Syeed v. Bloomberg L.P.*, 58 F.4th 64, 67 (2d Cir. 2023) (Rule 12(b)(6)).

---

[3] The FDIC-Receivers requested oral argument via a notation on their brief. The Court declines this request because the parties' briefing was sufficient and oral argument would not materially assist the Court. *See Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2005) ("[A] district court acts well within its discretion in deciding dispositive motions on the parties' written submissions without oral argument.").

## DISCUSSION

The FDIC-Receivers move to dismiss Plaintiffs' Complaint for a lack of subject-matter jurisdiction under Rule 12(b)(1), and, in the alternative, for failure to state a claim under Rule 12(b)(6).

## I.    Failure to Exhaust

The FDIC-Receivers assert that Plaintiffs failed to submit timely administrative claims to the FDIC-Receivers, as required by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d)(5)(C), and that Plaintiffs therefore failed to exhaust the mandatory administrative claims process.  Br. at 12-13. Plaintiffs do not dispute that they failed to file their claims prior to the Claims Bar Date. Instead, they argue that the FDIC-Receivers' statutorily required notice of the Claims Bar Date was deficient, and in the alternative, that the Claims Bar Date should be waived, estopped, or equitably tolled.  Opp. at 1-7.  For the reasons set forth below, the Court finds that Plaintiffs failed to timely exhaust FIRREA's administrative remedies, and that Plaintiffs have not established a basis for applying any equitable doctrine to FIRREA's filing deadline.

### 1.    The FIRREA Claims Process

"FIRREA granted the FDIC broad powers in its capacity as receiver to determine claims against . . . failed institutions, and established a comprehensive administrative claim process, adherence to which is a prerequisite to judicial review of those claims." *Betancourt v. FDIC*, 851 F. Supp. 126, 129 (S.D.N.Y. 1996).  FIRREA requires the FDIC, upon its appointment as the receiver of a failed financial institution, to "promptly publish a notice to . . . creditors to present their claims, together with proof, to the receiver," by a specified date not to exceed 90 days from the date of the FDIC's publication.  12 U.S.C. § 1821(d)(3)(B)(i); *Betancourt*, 851 F. Supp. at 129 (same).  Upon receipt of a claim, the

FDIC then has 180 days to determine whether to allow or disallow the claim.  12 U.S.C.

§ 1821(d)(5)(A)(i); *Betancourt*, 851 F. Supp. at 130.  "A claimant may obtain judicial review

of the FDIC's claim determination if the claimant files a claim with the FDIC, receives a

'disallowance' of the claim, and then files suit in a district court within 60 days of the FDIC's

disallowance."  *Carlyle Towers Condo. Ass'n, Inc. v. FDIC*, 170 F.3d 301, 305 (2d Cir. 1999)

(quoting 12 U.S.C. § 1821(d)(5)(A), (6)(A)).

       If, however, a claimant does not submit his claim until after the date specified in the

FDIC's published notice to creditors, the claim shall be "disallowed and such disallowance

shall be final."  12 U.S.C. § 1821(d)(5)(C)(i); *Betancourt*, 851 F. Supp. at 130.  FIRREA

provides an explicit exception, however, from this timeliness requirement for those claimants

who "did not receive notice of the appointment of the receiver in time to file such claim

before such [bar] date."  *Carlyle Towers*, 170 F.3d at 305 (alteration in original) (quoting 12

U.S.C. § 1821(d)(5)(C)).

       The Second Circuit has held that these provisions, taken together, "create[] a

requirement that all claims must be presented to the FDIC before a claimant may seek judicial

review."  *Carlyle Towers*, 170 F.3d at 307; *see also Resolution Tr. Corp. v. Elman*, 949 F.2d

624, 627 (2d Cir. 1991) ("[T]he statute means just what it says, and, accordingly . . . a

claimant must first present its case to the [FDIC] under the administrative procedure erected

by FIRREA before seeking relief in the federal courts."); *Circle Indus.*, *Div. of Nastasi-White,

Inc. v. City Fed. Sav. Bank*, 931 F.2d 7, 8 (2d Cir. 1991) (per curiam) (affirming dismissal for

lack of subject matter jurisdiction where plaintiff failed to exhaust the administrative claim

determination procedures mandated by FIRREA).  "[J]udicial review is authorized only *after*

a claimant files a proof of claim and the FDIC either denies the claim or fails to adjudicate the

claim in a timely manner." *Huggins v. FDIC*, No. 07-cv-05313 (RJD), 2010 WL 3926263, at *2 (E.D.N.Y. Sept. 29, 2010).

Whether Plaintiffs timely filed their claim is not in dispute — Plaintiffs themselves concede that they did not.  Opp. at 5.  It was not until nearly three months after the Claim Bar Date —on October 6, 2023 — that the Estate, acting through its attorney, filed an administrative claim with the FDIC-Receiver-Signature.  Opp. at 5.  That claim made no reference whatsoever to FDIC-Receiver-Bridge and the FDIC has no record of Plaintiffs having ever submitted a claim to the FDIC-Receiver-Bridge.  Greiser Decl. ¶ 12.  That is reason alone to dismiss Plaintiffs' claims at least as to FDIC-Receiver-Bridge, and Plaintiffs do not oppose the motion to dismiss the claims against FDIC-Receiver-Bridge.  *See generally* Opp.; *see* Reply at 12 n.3; *see also Curry Mgmt. Corp. v. JPMorgan Chase Bank, N.A.*, 643 F. Supp. 3d 421, 426 (S.D.N.Y. 2022) ("A party may be deemed to concede an argument by failing to address it in an opposition brief." (citing *AT & T Corp. v. Syniverse Techs., Inc.*, No. 12-cv-01812 (NRB), 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014))).  Moreover, Plaintiffs did not wait for an FDIC resolution of their claims before initiating suit.  On or about January 16, 2024 — months before receiving any determination from the FDIC — Plaintiffs initiated this action in state court.   Dkt. 1-2.  Although the action was not removed to this Court until May 2, 2024 — after the FDIC's Notice of Disallowance — "subject matter jurisdiction . . . is determined as of the time of the filing of the complaint . . . ."  *Burns v. King*, 160 F. App'x 108, 111 (2d Cir. 2005) (summary order) (citing *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003)).[4]  That Plaintiffs did not await a determination on their claims before bringing this suit is likewise itself sufficient to find that

---

[4] Plaintiffs' representation that they "pursued this lawsuit only after the FDIC denied plaintiffs' claims" is inaccurate.  Opp. at 7.

they did not exhaust FIRREA's administrative claim procedures.  *See, e.g.*, *Caires v. FDIC*, No. 16-cv-02651 (JGK), 2017 WL 1393735, at *3 (S.D.N.Y. Apr. 18, 2017) ("The exceptions to § 1821(d)(13)(D) 'make crystal clear that judicial review is authorized only after a claimant files a proof of claim and the FDIC either denies the claim or fails to adjudicate the claim in a timely manner.'" (quoting *Huggins*, 2010 WL 3926263, at *2)).

Moreover, Plaintiffs did not file their claim by the Claims Bar Date.  Plaintiffs do not dispute that they received notice of the Claims Bar Date.  Nor do Plaintiffs allege that they fall within the narrow exception from FIRREA's timeliness requirements for those claimants who "did not receive notice of the appointment of the receiver in time to file such claim before such date."  12 U.S.C. § 1821(d)(5)(C)(ii).  Instead, Plaintiffs claim they did not realize their claim was subject to the Claims Bar Date because the publication notice was inconsistent with (and superseded by) the notice the FDIC published on its website.  Opp. at 1-5.  According to Plaintiffs, FDIC's website notice defined creditors able to file claims with the FDIC as "*only* those parties that had 'provided a service or product, leased space, furniture, or equipment to Signature Bank prior to March 12, 2023, and have not been paid.'"  *Id.* at 2-3 (emphasis added) (further emphasis omitted) (quoting Dkt. 12-2).  Because the FDIC's website "does not refer to the type of a claim that plaintiffs have filed herein, namely, a claim by a non-vendor or non-customer of Signature Bank," Plaintiffs argue that they were not put on notice that the Claims Bar Date applied to their claims against the FDIC-Receivers.  *Id.* at 3-4.  The Court is not so persuaded.

First, the FDIC-Receivers satisfied the statutory requirements for notice.  As noted above, under Section 1821(d)(3)(B), the FDIC, upon the liquidation or winding down of a failed bank, is required to "promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the received by a date specified in the notice

which shall be not less than 90 days after the publication of such notice."  12 U.S.C.

§ 1821(d)(3)(B)(i).  The FDIC must then republish the notices one and two months after the

initial notice.  *Id.* § 1821(d)(3)(B)(ii).  The FDIC published multiple notices of its

appointment and the Claims Bar Date in newspapers of general circulation.  *See* Grieser Decl.

¶¶ 8-9.  Courts have found that "constructive publication notice is sufficient for parties . . .

who were not known, identifiable creditors."  *Alkasabi v. Wash. Mut. Bank, F.A.*, 31 F. Supp

3d 101, 108 (D.D.C. 2014) (citing *Tillman v. Resolution Tr. Corp.*, 37 F.3d 1032, 1036 (4th

Cir. 1994)); *see Tillman*, 37 F.3d at 1036 (holding that publication in local newspapers

precluded claimant's defense of lack of notice of receivership).  As Plaintiffs acknowledge,

the notice published in newspapers had no limiting language as to creditors, stating only: "All

creditors having claims against the Failed Institution must submit their claims, in writing,

together with proof of the claims, to the Receiver on or before July 17, 2023."  Dkt. 10-6; Dkt.

10-7.  The FDIC therefore complied with its statutory requirements to provide notice.

The Court does not find that FDIC's newspaper publication was — as Plaintiffs

argue — "supersede[d]" by the supplemental notice FDIC provided through its website.  Opp.

at 5.  Construed in context, the FDIC's website notice advises certain groups of creditors —

those that "provided a service or product, leased space, furniture, or equipment to" Signature

Bank or Signature Bridge Bank prior to March 12, 2023 — that they "may have a claim"

against Signature Bank and Signature Bridge Bank.  Dkt. 12-2 at 6.  There is no indication,

however, that this is an exhaustive list of the creditors who may bring claims against the

FDIC-Receivers.  Consistent with the newspaper notice, the website notice goes on to state:

"*Any* party/claimant who wishes to submit a receivership claim . . . may do so either

electronically or by mail," and advises that "claim[s] must be filed on or before 07/17/2023

(the Claims Bar Date)."  *Id.* at 6-7 (emphasis added).  The notice cautions, consistent with

Section 1821(d), that "[u]nder federal law, failure to file a claim on or before the Claims Bar Date will result in disallowance of the claim by the Receiver," and that such disallowance "will be final." *Id.* at 7. FDIC also advises that any questions can be directed to the FDIC Customer Service Department. *Id.* at 8. Although the notice advises certain subsets of creditors of potential claims against Signature Bank and Signature Bridge Bank, there is no suggestion on the face of the notice that the administrative review process (including the Claims Bar Date) applies "only" to those parties.

Because the Court finds that the FDIC-Receivers complied with the statutory notice requirements and Plaintiffs did not timely exhaust FIRREA's comprehensive administrative claims process, Plaintiffs' claims are time barred.

### 2. Equitable Tolling

Plaintiffs argue that even if they received the statutorily required notice, FIRREA's filing deadline should be tolled, waived, or equitably estopped because of the supposed inconsistency between the FDIC-Receivers' newspaper notice and the notice published on the FDIC's website. Opp. at 5. "As a general proposition, a time limitations period that is analogous to a statute of limitations is subject to equitable tolling, whereas a time bar which stands as a jurisdictional prerequisite to filing a suit in federal court is not." *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 2020). Therefore, to resolve Plaintiffs' argument, the Court must first address whether the FDIC-Receiver's Claims Bar Date constitutes a jurisdictional limitation, or a requirement more akin to a statute of limitations that is subject to tolling.

In determining whether a timely filing requirement is a statute of limitations or a jurisdictional prerequisite to suit in federal court, courts consider "[t]he structure of [the statute], the congressional policy underlying it, and the reasoning of [Supreme Court] cases."

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). "Courts will not infer congressional intent to limit their jurisdiction; rather, there is a presumption in favor of judicial review of an agency decision." *Carlyle Towers*, 170 F.3d at 306. "The presumption may be rebutted only by 'clear and convincing evidence' that Congress intended to preclude review." *Id.* (quoting *Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991)); *see also Dew v. United States*, 192 F.3d 366, 372 (2d Cir. 1999) ("Although there is a 'presumption' in favor of judicial review of agency action, this presumption may be overcome when a congressional intent to preclude judicial review is 'fairly discernible' in the statutory scheme." (quoting *Carlyle Towers,* 170 F.3d at 306)). The Supreme Court recently reiterated the demanding standard for finding congressional intent to preclude judicial review, observing that "most time bars are nonjurisdictional" even when "framed in mandatory terms." *Harrow v. Dep't of Defense*, 144 S. Ct. 1178, 1183 (2024) (quoting *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015)).

The Second Circuit's decision in *Carlyle Towers* compels this Court to hold that the FDIC-Receivers' Claims Bar Date is not jurisdictional. In *Carlyle Towers*, the Second Circuit advised that, "[a]lthough the FIRREA makes exhaustion a jurisdictional requirement, it does not necessarily follow that compliance with time limits imposed by the FDIC have the same force." 170 F.3d at 307. Assessing the legal effect of the FDIC's claims bar date on claims that did not accrue until after that bar date, *Carlyle Towers* undertook a comprehensive analysis of FIRREA's statutory structure and legislative history. *See id.* at 307-09. Turning first to the text itself, the Second Circuit noted that the subsection that attaches consequences to noncompliance with filing periods, Section 1821(d)(5)(C), states only that claims filed after the bar date shall be "disallowed and such disallowance shall be final." *Id.* at 308 (quoting 12 U.S.C. § 1821(d)(5)(C)). Section 1821(d)(5)(C) "does not speak in the language of

jurisdiction"; to the contrary, its language "supports the notion that a disallowance under Section 1821(d)(5)(C) shall be a final agency action, and therefore ripe for district court adjudication." *Id.* The Second Circuit underscored that the language in Section 1821(d)(5)(C) is markedly different from that contained in Section 1821(d)(6)(B), which bars judicial review of claims not brought within the requisite timeframe. Under Section 1821(d)(6)(B), failure to bring suit in federal court within the allotted 60 days of an administrative determination shall result in the claim being "disallowed[,] . . . such disallowance shall be final, *and the claimant shall have no further rights or remedies with respect to such claim*." *Id.* at 309 (quoting 12 U.S.C. § 1821(d)(6)(B)). *Carlyle Towers* held that Congress "clearly intended" for the effect of the emphasized language to "be more significant than the simple 'such disallowance shall be final' language incorporated in paragraph (5)(c)(i)." *Id.* A contrary reading would render paragraph (6)(B)'s additional language superfluous. *Id.*

The *Carlyle* court next turned to FIRREA's legislative history and found that it, too, supported finding that the time limitation was not jurisdictional. *Id.* The Second Circuit noted the absence of any discussion regarding the time frame in which to initiate the claims process from either the Reports of the House Committee on Banking, Finance, and Urban Affairs, or the House Committee on the Judiciary. *Id.* (citing H.R. Rep. No. 101-54(I), at 418-19 (1989); H.R. Rep. No. 101-54(V), at 12 (1989)). "If any inference is to be drawn from this omission," the Second Circuit explained, "it is that Congress did not focus on the time frame in which claims would be submitted to the FDIC and did not consider it a jurisdictional requirement." *Id.*

Finally, *Carlyle Towers* declined to follow sister courts that have held that timely filing prior to the claims bar date is a jurisdictional requirement under FIRREA. *Id.* at 309-10

14

(citing *Paul v. FDIC*, 91 F.3d 110, 113 (11th Cir. 1996); *Althouse v. Resolution Tr. Corp.*, 969 F.2d 1544 (3d Cir. 1992) (Alito, J.); then citing *FDIC v. Atchison & Keller*, 913 F. Supp. 19, 24-25 (D.D.C. 1996); and then citing *Cap. Data Corp. v. Cap. Nat'l Bank*, 778 F. Supp. 669, 676 (S.D.N.Y. 1991)).  In declining to adopt the reasoning of these courts, the Second Circuit noted that, with the exception of *Althouse*, none of these cases "offer[ed] any analysis regarding whether timely filing with the FDIC represents a jurisdictional barrier or merely something akin to a statute of limitations." *Id.* at 310.  This Court agrees: *Atchison* and *Capital Data Corp.* relied primarily on Section 1821(d)'s language providing that disallowances for failure to timely file claims "shall be final."  *See Atchison*, 913 F. Supp. at 25; *Capital Data Corp.*, 778 F. Supp. at 676.  But, as *Carlyle Towers* explains, Section 1821(d) "does not speak in the language of jurisdiction."  *Carlyle Towers*, 170 F.3d at 308; *see also Zipes*, 455 U.S. at 393-94 (timely filing was not a jurisdictional requirement where "[t]he provision specifying the time for filing charges with the EEOC . . . does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts"); *Kwai Fun Wong*, 575 U.S. at 410-11 (no jurisdictional consequence to provision providing that a "tort claim against the United States shall be forever barred" unless presented "within two years" (quoting 28 U.S.C. § 2401(b)).  Next, *Paul* assumed, without any discussion, that timely filing is a "condition[] to subject matter jurisdiction."  91 F.3d at 112.  *Paul* reached this conclusion notwithstanding the FDIC's adoption of a Stipulation of Reversal in that case seeking to "forgiv[e] the untimely filing of [plaintiffs'] claim," *id.* — a stipulation the FDIC would presumably only have adopted if it viewed the filing deadline as a nonjurisdictional requirement subject to waiver.  *See Carlyle Towers*, 170 F.3d at 310 ("[I]t appears from the *Paul* case that the FDIC itself has taken the position that the bar date was not a jurisdictional barrier.").  None of these cases incorporate any discussion of whether the failure to meet the

filing deadline should nevertheless be subject to equitable considerations such as tolling, waiver, or estoppel.

The FDIC-Receivers' attempts to distinguish *Carlyle Towers* are unpersuasive. The FDIC-Receivers argue that *Carlyle Towers* addressed only claims that accrued after the Claims Bar Date, and is therefore inapposite here, where Plaintiffs' claims indisputably arose prior to the expiration of the Claim Bar Date. Reply at 5. As set forth above, however, much of *Carlyle* Tower's textual and legislative analysis applies with equal force to the circumstances at bar — that is, to claims that accrued prior to the filing date but were filed thereafter. Moreover, subsequent cases applying *Carlyle Towers* have construed its holding broadly. For instance, in *Paese v. Hartford Life & Accident Insurance Co.*, the Second Circuit described *Carlyle Towers* as holding that "the mere late filing of [an administrative action under FIRREA], after the agency's limitation period had expired, did not deprive the district court of jurisdiction." 449 F.3d 435, 444 (2d Cir. 2006); *see also Boos v. Runyon*, 201 F.3d 178, 182 (2d Cir. 2000) ("[I]n *Carlyle Towers* . . . we held that, under [FIRREA], the complete failure to take appropriate administrative action constituted a jurisdictional barrier to suit in federal court, but merely filing such an action late, after the agency's limitation period had expired, did not deprive the district court of jurisdiction."). These cases do not interpret *Carlyle Towers* as limited to only those claims that accrue after the filing deadline, and this Court likewise declines to read such a limitation into *Carlyle Tower's* holding.

The FDIC-Receiver's cited authorities do not support a contrary holding. The FDIC-Receivers largely cite case law establishing that exhaustion of the administrative process overall is a prerequisite for judicial review. *See, e.g.*, Br. at 12; Reply at 2 (first citing *Betancourt*, 851 F. Supp. at 129-30; then citing *Elman*, 949 F.2d at 627; then citing *Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995); and then citing *Resolution Tr. Corp. v. W.V.*

*Dev. & Mgmt.*, 73 F.3d 1298, 1309 (3d Cir. 1996)).  However, as *Carlyle Towers* advised, while "FIRREA makes exhaustion a jurisdictional requirement, it does not necessarily follow that compliance with time limits imposed by the FDIC have the same force."  170 F.3d at 307. For the proposition that FIRREA's filing deadline is itself a jurisdictional requirement, Plaintiffs cite just two out-of-circuit cases: *Elmco Properties, Inc. v. Second National Federal Savings Ass'n*, 94 F.3d 914, 920 (4th Cir. 1996), and *Atchison*, 913 F. Supp. at 25.  *See* Br. at 13.  As noted above, the Second Circuit has already explicitly declined to follow *Atchison*. *See Carlyle Towers*, 170 F.3d at 310.  And *Elmco Properties* suffers from the same deficiencies as the out-of-circuit cases distinguished by *Carlyle Towers*.  *Elmco* concluded that, under FIRREA, a late filing "requires the denial of [a] claim . . . and withdraws jurisdiction over that claim from all courts," 94 F.3d at 920 (footnote omitted), without "offer[ing] any analysis regarding whether timely filing with the FDIC represents a jurisdictional barrier or merely something akin to a statute of limitations," *Carlyle Towers*, 170 F.3d at 310.

The Court thus finds that the "filing period is subject to 'waiver, estoppel, and equitable tolling.'"  *Carlyle Towers*, 170 F.3d at 310 (quoting *Zipes*, 455 U.S. at 393).  "As a general matter, a litigant seeking equitable tolling must establish two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"  *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (quoting *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)).  "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those circumstances caused him to miss the original filing deadline." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011).  As for equitable estoppel, the doctrine applies "where one party rightfully relies upon the word or deed of another party and in so

17

relying, changes his position to his injury." *Holloway v. King*, 161 F. App'x 122, 125 (2d Cir. 2005) (summary order) (citation and quotation marks omitted); *see also Rich v. Associated Brands, Inc*., 379 F. App'x 78, 81 (2d Cir. 2010) (summary order) ("Equitable 'estoppel arises if (i) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (ii) the plaintiff reasonably relied on that misrepresentation to his detriment.'" (quoting *Kavowras v. N.Y. Times Co*., 328 F.3d 50, 56 (2d Cir. 2003))). Courts have "excused parties who were misled about the running of a limitations period, whether by an adversary's actions, by a government official's advice upon which they reasonably relied, or by inaccurate or ineffective notice from a government agency required to provide notice of the limitations period." *Carlyle Towers*, 170 F.3d at 310 (quoting *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997)).

Plaintiffs' claims here are not, however, salvaged by equitable estoppel or equitable tolling. As noted above, the Court does not find that the FDIC's website was misleading. Even if it was, however, Plaintiffs have not pleaded facts that suggest that the alleged inaccuracies in the FDIC's website notice caused their noncompliance with the filing deadline. "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances. *He must further demonstrate that those circumstances caused him to miss the original filing deadline*." *Harper*, 648 F.3d at 137 (emphasis added). That Plaintiffs filed an administrative claim with the FDIC (albeit belatedly) undermines Plaintiffs' assertion that, because of FDIC's supposedly deficient notice, they did not appreciate that they had a claim subject to the administrative review process. Most importantly — and fatal to Plaintiffs' reliance on equitable doctrines— Plaintiffs do not allege that they actually relied upon the FDIC's website notice. Plaintiffs only argue that "[s]omeone in the United States would clearly seek information regarding Signature Bank after its closure on March 12, 2023

18

on the FDIC website on the internet, not in some random page."  Opp. at 2.  That "someone" might seek information on the FDIC's website does not, however, establish that Plaintiffs relied upon such notice published there, or that the notice "caused them to miss the original filing deadline."  *Harper*, 648 F.3d at 137; *see also Quinn v. United States*, No. 20-cv-03261 (KMK), 2021 WL 738756, at *9 (S.D.N.Y. Feb. 25, 2021) ("[T]here must be a causal connection between the extraordinary circumstances and a party's failure to timely file his action."); *Bowden*, 106 F.3d at 438 (rejecting argument for equitable tolling where plaintiff "ma[de] no allegation that the [agency's] failure to give notice misled him").

This Court is aware that the Second Circuit has advised that, "[r]elated to the pleading rules for affirmative defenses, equitable tolling often raises fact-specific issues premature for resolution on a Rule 12(b)(6) motion, before a plaintiff can develop the factual record."  *Clark v. Hanley*, 89 F.4th 78, 94 (2d Cir. 2023); *cf. Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60-61 (2d Cir. 2002) (remanding for an evidentiary hearing as to equitable tolling to allow for further fact-finding as to the severity and timing of plaintiff's mental impairment where the plaintiff asserted that incapacity caused tardy filing); *Valverde v. Stinson*, 224 F.3d 129, 135 (2d Cir. 2000) (vacating dismissal and remanding "to develop further . . . facts" where *pro se* plaintiff proffered sufficient statements to counter the motion to dismiss, including that correction officer confiscated his legal papers).  But this is not a case that would benefit from further fact-finding: Plaintiffs' only proffered basis for equitable tolling or estoppel is the FDIC-Receivers' supposedly defective website notice.  The Court has already deemed that argument deficient based on the pleadings and on documents of which it can take judicial notice.  *See, e.g.*, *Ko. v. JP Morgan Chase Bank, N.A.*, 730 F. App'x 62, 63-64 (2d Cir. 2018) (summary order) (affirming 12(b)(6) dismissal where defendant did not demonstrate that equitable tolling was warranted); *Bey v. Welsbach Elec. Corp.*, 38 F. App'x 690, 692 (2d Cir.

2002) (summary order) ("[Plaintiff's] unsupported assertion . . . [was] insufficient to warrant [waiver, estoppel, or equitable tolling]."). Courts have specifically reached the question of equitable tolling of FIRREA deadlines on a motion to dismiss. *See, e.g.*, *Alkasabi*, 31 F. Supp.3d at 111 (finding on motion to dismiss that "even assuming that the Claims Bar Date is not jurisdictional and thus could potentially be subject to equitable tolling, plaintiffs here have not alleged any facts sufficient to meet the due diligence requirement for equitable tolling"); *Trice v. FDIC*, No. 17-cv-01564, 2019 WL 1766158, at *4-5 (D.D.C. Apr. 22, 2019) (deciding on a motion to dismiss that plaintiff failed to satisfy the standard for equitable tolling of FIRREA's sixty-day filing deadline).

In the absence of a recognized equitable consideration, the Court cannot extend or waive the filing timeline in FIRREA. Plaintiffs' claims are therefore time barred and the Court need not reach the FDIC-Receivers' remaining arguments under Rule 12(b)(6).

## II.    Dismissal of Remaining State Law Claims

"[T]he Court may examine subject matter jurisdiction, *sua sponte*, at any stage of the proceeding." *FDIC v. Four Star Holding Co.*, 178 F.3d 97, 100 n.2 (2d Cir. 1999) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). With the dismissal of the FDIC, all that remains are the state law claims asserted against yet-unnamed defendant banking institutions ABC Corporations Nos. 1 through 11, insofar as any remain, given that it appears that the stolen checks were all processed by Signature Bank. The basis asserted for federal jurisdiction in this matter is Section 1819(b)(2)(B), which provides that the "Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate Untied States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is

substituted as a party." *See* Dkt. 1 at 2.[5]  The dismissal of the FDIC-Receivers from this

action therefore eliminates the only hook for maintaining this action in federal court.  *See*

*Nials v. Bank of Am.*, No. 13-cv-05720 (AJN), 2014 WL 1174504, at *9 (S.D.N.Y. Mar. 21,

2014) ("The Court's resolution of the federal causes of action and the dismissal of the FDIC

have resolved the jurisdictional basis for maintaining this action in federal court under 28

U.S.C. § 1331.").[6]

Moreover, "[a] district court has the discretion to remand a case removed under

§ 1819(b)(2)(B) after dismissing all claims against the FDIC." *JPMorgan Chase Bank, Nat.*

*Ass'n v. Nell*, No. 10-cv-01656 (RRM), 2012 WL 1030904, at *7 (E.D.N.Y. Mar. 27, 2012);

*see also Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 657 (2d Cir. 1996) (noting

that, following dismissal of bank under FDIC's conservatorship, "the court . . . had the

*discretion* to remand the case to state court" (citing 28 U.S.C. § 1367(c)(3))).  "Where no

---

[5] There is no basis for finding that diversity jurisdiction exists.  Plaintiffs assert only that Defendants ABC Corporations Nos. 1 through 11 are "Banking Institutions doing business in the State of New York," but otherwise offer no factual allegations pertaining to the unnamed Defendants' domicile, let alone Plaintiffs' citizenship.  *See* Compl. ¶ 3.

[6] The Second Circuit's decision in *FDIC v. Four Star Holding Co*. does not counsel otherwise.  *See generally* 178 F.3d 97 (2d Cir. 1999).  The question before the Second Circuit in *Four Star Holding Co*. was a narrow one: whether the district court retained subject matter jurisdiction over a case arising under 12 U.S.C. § 1819(b) after the FDIC transferred its interest in the subject property to a private third party.  *See id.* at 100.  The Second Circuit held that the transfer of assets by the FDIC did "not divest the court of subject matter jurisdiction under Section 1819 and that the district court retained jurisdiction over this case notwithstanding the transfer of FDIC's interest." *Id.* at 101.  In so holding, the Second Circuit noted that a "transferee from FSLIC or FDIC, as successor of their interests, is still entitled to the protection of federal courts." *Id.* at 100 (quoting *Fed. Sav. & Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 696 (5th Cir. 1991)).  The Second Circuit observed that a contrary holding could "deter transactions by the FDIC that presumably are in the public interest." *Id.* at 101.  *Four Star Holding Co*.'s holding was therefore informed by the special concerns raised by a transfer of ownership interests in the assets of a corporation subject to receivership.  The decision does not control here, where the FDIC has been dismissed from the action due to Plaintiffs' failure to exhaust their administrative remedies.  *See also 900 3rd Ave. Assocs. v. Finkielstain*, 758 F. Supp. 928, 934 (S.D.N.Y. 1991) (declining to find that "§ 1819 completely and automatically 'federalizes' any civil action in which the FDIC is a party").

issues pertaining to the FDIC remain and no independent basis for federal jurisdiction exists, remand is warranted." *Nell*, 2012 WL 1030904, at *7.  Given the still-early procedural posture of this case, and that the remaining Defendants are still unnamed, the values of "judicial economy, convenience, fairness, and comity" do not weigh in favor of the Court's exercise of supplemental jurisdiction.  *Mizuna, Ltd.*, 90 F.3d at 657 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 103 (2d Cir. 1998) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims . . . ." (citing *Cohill*, 484 U.S. at 350)).

For the foregoing reasons, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, if any, against the unnamed Defendants ABC Corporations No. 1 through 11.

## CONCLUSION

As explained, Defendant FDIC-Receivers' motion to dismiss Plaintiffs' Complaint with prejudice is GRANTED.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims against Defendants ABC Corporations Nos. 1 through 11 and therefore the case is remanded to the Supreme Court of the State of New York, County of New York.

Dated: January 16, 2025
    New York, New York

                    SO ORDERED.

                    Jennifer Rochon
                    JENNIFER L. ROCHON
                    United States District Judge